## FORBES et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. November 5, 1920.)

No. 3520.

**1. Courts ⊙⇒342—District Court has jurisdiction to condemn for military reservation in suit at law; "appeal."**

Though Act July 2, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. § 6911a), requires proceedings for condemnation for military purposes to conform to state laws, the United States District Court is not deprived of its jurisdiction under Judicial Code, § 24 (Comp. St. § 991), over such proceedings as a suit at law by the United States, brought in conformity with Code Ala. 1907, §§ 3860, 3862, 3865, 3868, 3869, 3875, 3879, 3882, by the fact that such provisions authorize institution of the proceedings in the probate court, with appeal to the circuit or city court, and trial de novo, and there are no corresponding federal courts, so that there can be no "appeal," which generally indicates a method whereby a party obtains the examination of his rights in a tribunal other than that in which the suit was brought or in which it was pending.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Appeal.]

**2. Eminent domain ⊙⇒198(1)—Right to condemn cannot be first raised at jury trial.**

Where proceedings to condemn land for military purposes were brought in the United States District Court, the owners could question the right to condemn at the hearing for the appointment of commissioners, which corresponded to the hearing in the probate court under the Alabama Code, but could not first present that question at the trial before a jury, after the award of the commissioners, though they could have raised it in proceedings in the state circuit court on appeal from the probate court, where they had a right of trial de novo and trial by jury.

**3. Eminent domain ⊙⇒262(5)—Averment of authority of Secretary of War not jurisdictional to condemnation for military purposes, and omission not ground for reversal.**

In proceedings under Act July 2, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6911a), to condemn land for military purposes, the failure of the petition to allege that the Secretary of War caused proceedings to be instituted is not such a jurisdictional defect as to require reversal of judgment, even if such omission would render the petition defective, if objection had been taken thereto before verdict.

**4. Evidence ⊙⇒83(1)—Authority presumed for institution of proceedings by district attorney.**

Where the district attorney, a sworn law officer of the United States, in his official capacity instituted a suit for condemnation for military purposes, it must be presumed that he did his duty and exacted the performance of all that was necessary to make what he did legal, including action by the Secretary of War causing the proceedings to be instituted.

**5. Witnesses ⊙⇒379(6)—Tax assessment sheet held admissible to impeach owner's testimony.**

After the owner of land had testified as to its value in proceedings to condemn it for military purposes, a tax assessment sheet returned by him, showing the valuation to be less than he stated, was admissible to impeach his credibility, where there was evidence that it was made at his instance or was expressly acquiesced in by him as a proper valuation, though under Acts Ala. 1915, p. 386, the valuation is determined by the tax officials.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

268 F.—18

**6. Eminent domain ☞220—View by jury after testimony is within discretion of court.**

In proceedings to condemn land for military purposes, where the testimony was conflicting as to the character and situation of the land and the elements entering into its value, it was not an abuse of the trial court's discretion to permit the jury to view the premises after the examination of witnesses was concluded.

**7. Eminent domain ☞220—Change of condition by United States held not to make view improper.**

The fact that the United States had changed the condition of a part of the land taken for military purposes does not show that it was error for the court to permit the jury to view the premises, where those changes did not affect the elements of valuation and damages concerning which the testimony was conflicting.

In error to the District Court of the United States for the Middle District of Alabama; Henry D. Clayton, Judge.

Condemnation proceedings by the United States against A. G. Forbes and others. Judgment permitting condemnation and assessing damages (259 Fed. 585), and defendants bring error. Affirmed.

See, also, 250 Fed. 299.

Fred S. Ball and E. R. Beckwith, both of Montgomery, Ala., and Sidney J. Bowie, of Birmingham, Ala., for plaintiffs in error.

Thomas D. Samford, U. S. Atty., of Opelika, Ala., and Wiley C. Hill, Sp. Asst. Atty. Gen., of Montgomery, Ala., for the United States.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was a petition filed in January, 1918, in the District Court by the District Attorney in the name of the United States (defendant in error here), praying the condemnation of the fee and all interest of the plaintiffs in error, A. G. Forbes, the Interstate Casualty Company, and the Capital National Bank, respectively the owner of, and the holders of mortgages on, described lands, being one quarter section and three half sections in Montgomery county, Ala., which the petitioner alleged were needed for a military training camp. The respective parties will be herein referred to as the plaintiff and the defendants. After the petition was filed, the court by order set a day for hearing the application, and directed that 10 days' notice of the application and of the day appointed for hearing the same be given the defendants by personal service by the marshal. On the day so appointed, personal service having been duly made and all parties being present or represented, and no objection to the petition being made by the defendants or any of them, the court, after evidence of the truth of the allegations of the petition had been adduced, granted the petition, and appointed three commissioners to assess the damages and compensation to which the defendants were entitled. After the commissioners had made an award, the defendant Forbes gave written notice of an appeal from such award and from the court's order of condemnation, demanding "a trial de novo in said cause, with a trial by jury." The court ruled that the defendants were entitled to have the damages and compensation assessed by

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a jury, which was done, but decided that they were not then entitled to raise objections to the petition by demurrer or to interpose the pleas tendered thereto. The action of the court in making the last-mentioned ruling is a principal subject of complaint in this court.

[1] The Act of Congress of July 2, 1917, entitled "An Act to authorize condemnation proceedings of lands for military purposes," contains the following provision:

"That hereafter the Secretary of War may cause proceedings to be instituted in the name of the United States, in any court having jurisdiction of such proceedings for the acquirement by condemnation of any land, temporary use thereof or other interest therein, or right pertaining thereto, needed for the site, location, construction, or prosecution of works for fortifications, coast defenses, and military training camps, such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted." 40 Stat. 241 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6911a).

That act also contains, among other provisions, one authorizing the Secretary of War to accept on behalf of the United States donations of lands required for the purposes mentioned in the above-quoted part of the act, and another authorizing the immediate taking possession of lands, etc., sought to be acquired in time of war for any of such purposes. By the Alabama general statute providing for the condemnation of lands for public uses, a written and verified application for an order of condemnation, stating the name and residence of the applicant, the uses or purposes for which the land is to be taken, and the interest or easement therein to be acquired, is to be made to the court of probate of the county in which such land, or a material portion thereof, may be situate. On a day appointed, to be at least 10 days after service by the sheriff or other legal officer on all owners of land sought to be condemned of notice of the application and of the day appointed for hearing the same, that court must hear the allegations of the application, and any objections that may be filed to the granting thereof, and any legal evidence touching the same, and make an order granting or refusing the application. If the application be granted, in whole or in part, the judge of probate must appoint three citizens of the county, possessing prescribed qualifications, to assess the damages and compensation to be paid to the owner or owners of the land. Either party may appeal from the order of condemnation to the circuit or city court of the county, "and on such appeal the trial shall be de novo"; and upon the trial in the court to which the appeal is taken an order of condemnation in accordance with the application is to be made, on the payment into court of the sum ascertained and assessed by the verdict of the jury and the costs of the suit. Code Ala. 1907, §§ 3860, 3862, 3865, 3868, 3869, 3875, 3879, 3882.

The proceeding provided for by the above-mentioned act being a suit at law, and the District Court being a court having original jurisdiction of all suits of a civil nature, at common law or in equity, brought by the United States (Metropolitan R. Co. v. District of Columbia, 195 U. S. 322, 25 Sup. Ct. 28, 49 L. Ed. 219; Judicial Code, § 24 [Comp. St. § 991]), that act authorizes the bringing of the suit in that

court, and its terms show that it was contemplated that, if a condemnation suit is so brought, the case throughout, from the filing of the application until judgment on a verdict of a jury assessing damages, if trial by jury is demanded, is to remain in that court, by which alone all action required to effect the condemnation sought is to be taken. The provision of the act that the proceedings provided for are "to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the states wherein the proceedings may be instituted" is not to be so construed as to defeat the purpose of the act to vest in the District Courts of the United States jurisdiction of the condemnation proceedings provided for, and is not to be given the effect of requiring a compliance with a state practice which is inapplicable to such a proceeding authorized to be brought, and brought, in one of those courts. Luxton v. North River Bridge Co., 147 U. S. 337, 13 Sup. Ct. 356, 37 L. Ed. 194. The provision of the Alabama statute for a trial de novo does not purport to create the anomaly of a party to a cause having the unconditional and unqualified privilege of having his rights passed on twice by the same court. That provision was made applicable only in the event of the authorized removal by appeal of a condemnation suit into a court other than the one in which it was brought. There is no such removal when such a suit is brought in the District Court of the United States. That court supervises the commissioners appointed to assess the damages, and also the trial by jury had at the instance of a party who is dissatisfied with the award of the commissioners.

[2] The right to condemn had been adjudged before the question of compensation was dealt with. Though the defendant Forbes obtained an assessment of the damages and compensation by a jury as a result of his giving notice of appeal and demanding a trial de novo and with a jury, there was no such appeal as could have been taken if the proceeding had been instituted in the court of probate of Montgomery county. In legal parlance the word "appeal" indicates a method or means whereby a party obtains an examination of his rights by a tribunal other than the one in which the suit or proceeding affecting those rights was brought, or in which it was pending before a removal of it was sought or effected. A provision for a trial de novo in a court to which a case is removed by appeal is not applicable, where the case must remain, until final judgment, in the same court in which it was brought. We are of opinion that the provision in question cannot properly be given the effect of entitling a landowner to two trials by the same court for the determination of the question of granting or refusing the application for a condemnation. The notice given to the defendants in pursuance of an order made on the day the petition was filed was an invitation to them to make on the day appointed for the hearing, or on another day to which the hearing might have been continued, any objections desired to be made to the granting of the application. That hearing by the court was for the express purpose of determining whether the application should be granted or refused. The defendants were afforded full opportunity then to demur to the petition or to plead any matter relied on as a defense. They

waived the right to interpose defenses by failing, without legal excuse, so far as appears, to make them at the proper time.

[3, 4] In argument in behalf of the defendants it was contended that the failure of the petition to aver that the Secretary of War caused the proceedings to be instituted was such a jurisdictional defect as requires a reversal of the judgment. There is nothing in the act to indicate that the determination by the Secretary of War that particular land is needed for a purpose mentioned in the act is required to be evidenced otherwise than by the institution of proceedings for the condemnation of that land for such purpose. It seems that if the petition was subject to objection because of the above mentioned omission of averment, its statement of the cause of action relied on was defective only in a respect which was cured by the verdict. Lincoln v. Iron Co., 103 U. S. 412, 26 L. Ed. 518. But the contention may be adversely disposed of on another ground. The bringing of the suit was an official act of the district attorney, a sworn law officer of the United States. In the absence of anything indicating the contrary, it is to be presumed that that official, in instituting the proceedings, did his duty, and that he exacted the performance of all that was required to make what he did legal and proper, including action by the Secretary of War causing the proceedings to be instituted. United States v. Commonwealth, etc., Trust Co., 193 U. S. 651, 24 Sup. Ct. 546, 48 L. Ed. 830; Jones, Commentaries on Evidence, § 45.

[5] Over objection by the defendants a tax assessment sheet returned by the defendant Forbes for the year 1917, in which possession of the land in question was taken by the government, was admitted in evidence. That instrument showed a valuation of the 1,093 acres at $16,395. Under the law of Alabama a person liable to taxation is not required to put a value on his property, a full and complete list of which he is required to return; the assessed value being determined and entered on the list by tax officials. Acts Ala. 1915, p. 386. The defendant Forbes was a witness in the trial, and testified that in 1917 the land was worth greatly more than the valuation stated in his assessment sheet for that year indicated. There was evidence tending to prove that the valuation of the land stated in that instrument was made at his instance or was expressly acquiesced in by him as a proper valuation. Under the circumstances mentioned we think that it was permissible to treat the valuation stated in the assessment sheet as a declaration or admission by Forbes, and that evidence of such declaration or admission inconsistent with his testimony in the trial was admissible as shedding light on his credibility, whether it was or was not admissible for another purpose. Birmingham Mineral R. Co. v. Smith, 89 Ala. 305, 7 South. 634.

[6] After the conclusion of the examination of witnesses in the trial, the jury, pursuant to an order of the court, to which the defendants objected, viewed the land sought to be condemned. We are not of opinion that the record shows that the making of that order was an abuse of the court's discretion. It is a common practice in condemnation proceedings for the court, in the exercise of its discretion, to permit the triers of fact to see the property the value of which is to

be assessed by them. Louisville & Nashville R. R. Co. v. Western Union Telegraph Co., 249 Fed. 385, 161 C. C. A. 359; Jones, Commentaries on Evidence, §§ 406, 407. There was conflicting testimony as to the quality of the land, and as to its topography and other physical features and surroundings affecting the question of its value. Testimony given in behalf of the defendants had some tendency to prove that as to part of the land its topography and its location with reference to two railroads and to growing suburbs of the city of Montgomery were such as to make it capable of development for residence or industrial purposes, other than agricultural, and that its adaptability to such uses was an element of value to be taken into consideration. It well might be that a view by the jury of the land and its surroundings would materially help them in the task of passing intelligently on conflicting claims of the parties as to the presence or absence of features or elements affecting its value.

[7] From the fact that the condition of part of the land had been materially changed since possession of it was taken by the government, it does not follow that it was an abuse of discretion to permit a view by the jury after such change was effected, though the value to be assessed was that of the land as it was when it was so taken. Many, if not most, of the features and circumstances that would be disclosed by a view of the land remained as they were before the government took possession; and it well may be supposed that the effect of the evidence as to conditions before the government took possession was not destroyed as a result of the jury seeing part of the land in its changed condition.

The conclusion is that there was no reversible error in any ruling complained of. The judgment is affirmed.